### WESTFALL et v NOTMAN et

Ohio Appeals, 7th Dist, Mahoning Co

Decided 1934

F. E. Hunter, Alliance, for plaintiffs in error.

Morgan, Cailor & Cunningham, Youngstown, and F. W. Andrews, Alliance, for defendants in error.

## OPINION

By ROBERTS, J.

No question is made in this case but that E. H. Westfall did, on the 15th day of April, 1930, make what was then a valid last will and testament, a copy of which will, or, perhaps more correctly speaking, a duplicate of said will, duly executed, is in evidence, marked "Plaintiff's Exhibit A." It is contended, however, that subsequent to the making of said will, and about May or June, 1931, said E. H. Westfall duly executed another last will, and that by the execution of this second will the first will, identified by copy as plaintiff's exhibit A in this case was revoked and thereby became null and void. It is further claimed that the second will has not been found, and that thereby a presumption of law has developed that the testator destroyed it thereby revoking it.

It is further contended that the revocation or destruction of the second will did not revive the first will, so claimed to have been revoked by the execution of the second will, and that said decedent thereby died intestate.

It is the contention on the other side of this case that said first will never was cancelled or revoked, that it was properly pro-

bated and continues to be a valid last will and testament of said decedent. The evidence upon the proposition as to the claimed execution of the second will is substantially as follows: J. J. Brown was called as the first witness, and at the time of testifying was Municipal Judge of the city of Alliance, and also a lawyer. He states that he was familiar with the original will, and stating further, in effect, that:

"On a day near the end of the month of May, 1931, or on a day beginning early in the month of June, 1931, Dr. Westfall came to my office in the city hall at Alliance, Ohio, and produced a copy of a will and stated to me that he desired to make alterations therein, to have it re-written. I was at work in the city hall and the doctor took up some questions concerning the re-writing of the will. After coming to my office and I learned his purpose, I said to him that I would not do the work for him, and said to him further that he could take the copy of the paper he presented to me, and take it to the court stenographer, and if he and she could work it out, very well. That was done and I know nothing more about it."

Emma Heidorn testified, in effect, that she is court stenographer of the Municipal Court of Alliance, Ohio, that she was acquainted with Dr. Westfall, that she was one of the witnesses to the will which was admitted to probate as plaintiff's exhibit A, and that she prepared a writing for Dr. Westfall subsequent to that date, about May or June, 1931, saying, in part:

"Why, Judge Brown brought Dr. Westfall into my office and said that Dr. Westfall wanted his will re-written, and that if Dr. Westfall and I could work it out, why all right, so we did and re-wrote his will."

She further testifies that she had before her the original will, exhibit A, the doctor desiring some changes to be made. She further testifies:

"He asked me to re-write his will and he gave me this copy and he indicated the changes he wanted, and he sat down by my desk as I was writing it and told me how to change the paragraphs, the paragraphs he' wanted changed."

The witness states further, in effect, that Dr. Westfall signed the will, that she signed it as a witness, and that another witness, whose name she does not recall, was called in and also signed as a witness, that Dr. Westfall signed in the presence of each of the witnesses, that he then acknowledged it to be his last will, that it was signed by the witnesses in the presence of each other and by the witnesses in the presence of the testator.

The following appears in cross examination of this witness, commencing on page 16:

"Q. Do you recall, Mrs. Heidorn, the substance of this paper when you had completed typing it?
A. The only thing I know, I used this as a form and copied the beginning and end as this is here, and the changes were made in the body of the will, and I don't remember what they were.
Q. And I believe you are saying that the only thing you want to testify to certainly is that the beginning and end of the paper which you prepared are the only parts of that paper which you want to testify correspond to the copy of plaintiff's exhibit A?
A. Yes.
Q. And you are not familiar with any parts of the contents of that paper between the first paragraph and the Item 7, in which Judge Brown is named executor?
A. "Item I: I direct that all my just debts and funeral expenses be first paid out of my estate."
Q. You think that was in?
A. Yes.
Q. And you put that in most any will you write, wouldn't you?
A. Yes.
Q. So aside from the first paragraph, reciting Dr. Westfall's name, and the fact that this was to be his last will and testament, and including the provisions which you recall were included in Item I, namely the payment of debts, from that point down to Item VII, wherein Judge Brown was appointed executor, you don't recall the substance of that paper. Am I right about that?
A. No, I don't."

Mrs. Heidorn further testified, on page 14, in answer to a question:

"A. I used this as a copy and I know the first two paragraphs in the will were not changed. Neither was the last one, Item VII, and the attesting clause was just the same."

Aside from the introduction of the testator to the stenographer, she is the only

witness who speaks concerning the execution of the so-called second will. She is quite positive in her testimony and is wholly uncontradicted in what she says in regard to the executing, acknowledgment and witnessing of the will. She says it was signed by her and some one whom she called in for that purpose, whose name she does not now recall; that the will was signed by Dr. Westfall in the presence of some witness, each witness signed in his presence and in the presence of each other, he at the time acknowledging the instrument to be his last will and testament.

The will thus executed would be a conformity with the requirements of the law. While two witnesses are required to the execution of a will, one witness may be sufficient to prove that a will was executed. The number of witnesses who speak upon the subject is only to be considered in determining the preponderance of the evidence. There is no contradiction of the testimony of this witness, and we think that her testimony, thus undisputed, was sufficient, and that the verdict of the jury in holding that the first will was a valid last will and testament, thereby finding that the first will had not been revoked, was against the manifest weight of the evidence. This witness testifies positively that the first two paragraphs of the original will were copied into the second will. The first paragraph reads as follows:

"I, E. H. Westfall, of the Village of Beloit, County of Mahoning and State of Ohio, do make and publish the following as my last will and testament, hereby revoking all former wills by me made."

Aside from the question as to whether or not the making of a second will constituted a revocation of the first will, there is an express revocation in the first paragraph. §10504-47, GC, reads:

"A will shall be revoked by the testator tearing, cancelling, obliterating or destroying it with the intention of revoking it, by the testator himself, or by some person in his presence, or by his express written direction, or by some other will or codicil, in writing, executed as prescribed by this title; or by some other writing, signed, attested and subscribed, in the manner provided by this title for the making of a will, but nothing herein contained shall prevent the revocation implied by law, from subsequent changes in the condition or circumstances of the testator."

Included in this section just quoted is this statement:

"Or by some other will or codicil, in writing, or by his express written direction."

The requirements of this section were complied with in the execution of the second will, as shown by the testimony. §10504-3 GC provides as to how wills shall be executed. The execution of the second will, as testified to by Mrs. Heidorn, was a compliance with this provision. The statute provides that it shall be signed by two or more competent witnesses. It is suggested in this case that without knowledge as to the identity of the second witness, it can not be said that such witness was a competent witness. What constitutes competency this section of the code does not declare. A person might be incompetent presumably by reason of extreme youthfulness or lack of mental capacity. The evidence indicates that this young lady was familiar with the execution of wills. She called on some person, who presumably would be competent and there is no objection to any question as to that proposition. Nothing more than a mere possible conjecture or suspicion can be indulged in upon this proposition. It is the opinion of this court, as before suggested, that the will was properly witnessed and executed, and therefore the verdict of the jury was against the manifest weight of the evidence and prejudicial error occurred in this respect.

Counsel for plaintiffs, at the close of the evidence, requested the court to instruct the jury as follows:

"Request No. 2. When a will once known to exist and to have been in the custody of the maker can not be found after his death, the legal presumption is that it was destroyed by the maker with the intention of revoking it."

This request was refused. We think it should have been given. This is the second paragraph of the syllabus in **Behrens v Behrens, 47 Oh. St, 323.**

Counsel also made another request:

"Request No. 3. After making a will, if the maker duly makes and executes, according to law, a second will, the revocation of the second will will not revive the first will unless the terms of such revocation show that it was his intention to revive and give effect to his first will, or after such revocation he duly republishes his first will."

This request was refused. It is copied from §10504-54 GC, was pertinent, we think competent and it was reversible error to refuse it.

The conclusion of this court is, in effect, as suggested, that the second will was duly executed, because a valid last will, that by its terms, as established by the evidence, it revoked the first will, which was admitted to probate. The second will has never been found and the legal presumption then develops that it was destroyed by the testator and that its destruction revoked the second will. The revocation of the second will did not revive the first will, with the result that the decedent died intestate. The verdict of the jury, having found otherwise, was against the weight of the evidence. Error has been committed, as has been suggested, by the refusal of the court to give the instructions presented before argument.

Judgment of the Court of Common Pleas is therefore reversed.

Judgment reversed.

LYNCH and SMITH, JJ, concur in the judgment.